IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERWYN D. FREEMAN, JR., | : | CIVIL ACTION NO. **3:CV-05-2596** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DARYL BRONKOSKI, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

**I. Background**.

The Plaintiff, Sherwyn D. Freeman, Jr., formerly an inmate at the United States Penitentiary at Allenwood ("USP-Allenwood"), Pennsylvania, and now an inmate at FCC-Coleman, Coleman, Florida (Doc. 114 and Doc. 120, p. 1, n. 1), filed, *pro se,* this joint *Bivens*[1] action, pursuant to 28 U.S.C. § 1331, and Federal Tort Claims Act ("FTCA") action, pursuant to 28 U.S.C. § 1346 and § 2680, on December 16, 2005.[2]  Plaintiff named as Defendant with respect to the *Bivens* portion of his pleading an individual employed by the Federal Bureau of Prisons ("BOP") at USP-Allenwood, namely Correctional Officer ("CO") Daryl Bronkoski.  With respect to his FTCA action, Plaintiff correctly named the United States of America as Defendant.  (Doc. 1, pp. 1-2).

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999 (1971).

[2] Plaintiff had filed a previous action with this Court, namely Civil No. 04-1546, M.D. Pa.

While at USP-Allenwood, Plaintiff claims that Defendant Bronkoski used excessive force on him during a June 6, 2005 incident when Defendant and other prison staff were trying to place a cell mate into Plaintiff's cell without notifying Plaintiff.  As we previously stated, the Plaintiff's claims against Defendant Bronkoski are the same claims asserted against this CO in an Injunction Motion Plaintiff filed in his previous civil rights case, Civil No. 04-1546, M.D. Pa.  In fact, as we noted earlier, Plaintiff's handwritten statement of claim in this case appeared to be an exact  photocopy of the Plaintiff's allegations in support of his prior Injunction Motion in Civil No. 04-1546.[3]

As stated, Plaintiff joined his FTCA action with his *Bivens* suit.  Plaintiff stated that the United States of America was an additional Defendant and that the United States has waived sovereign immunity for an FTCA action.   (Doc. 1, p. 2).   Plaintiff also stated that he exhausted his administrative remedies regarding his FTCA claim against the United States and received a final denial from the BOP on December 1, 2005.  (*Id*.).[4]  With respect to his *Bivens* claim, Plaintiff alleged that Defendant Bronkoski violated his Eighth Amendment right "by inflicting excessive force and cruel and unusual punishment on the Plaintiff, causing the Plaintiff to suffer mental anguish, pain and suffering and permanent brain damage, recurrent dizzy spells, and blurred vision."  (*Id*., ¶ IV.).

---

[3]The District Court denied Plaintiff's Injunction Motion in Civil No. 04-1546.

[4]As we previously noted, it was not disputed that Plaintiff exhausted his BOP administrative remedies with respect to both his FTCA claim and his *Bivens* claim.

As relief, Plaintiff requested three million dollars in damages from both Defendants, as well as punitive damages in the same amount. (*Id.*, p.3, ¶ V.).[5]  Plaintiff also requested that criminal aggravated assault charges be filed against Defendant Bronkoski.  (*Id.*, p. 3 handwritten statement, ¶ 8.).  We have found  that Plaintiff's latter relief request of the filing of criminal charges against Defendant Bronkoski was  not available in a
§ 1331 civil rights action.

This case was construed, in part, as an Eighth Amendment claim of excessive force against the sole individual Defendant CO Bronkoski.  Further, Plaintiff jointly filed his *Bivens* civil rights suit with his FTCA action.

Since the Plaintiff filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, the Prison Litigation Reform Act of 1995 (the "PLRA")[6] obligated  the Court to engage  in a screening of his Complaint.  In reviewing the Complaint under 28 U.S.C. §1915(e)(2)(B), we found  that the Plaintiff was unable to maintain his FTCA action against the United States jointly in this *Bivens* case.   We also found that Plaintiff's *Bivens* action, based on evidence submitted in his prior Civil Action 04-1546, failed to state an Eighth Amendment claim since Plaintiff was adjudicated to be the aggressor in the June 2005 incident.   We issued a Report and Recommendation on December 30, 2005, in which we recommended that Plaintiff's *Bivens* action be dismissed for failure to state a claim, and that the matter be dismissed without prejudice as to Plaintiff's FTCA action.

---

[5]We recommended that Plaintiff's request for a specific amount of monetary damages should be stricken.

[6]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

(Doc. 7).  On July 26, 2006, the District Court did not adopt our Report and Recommendation, and remanded this case to the undersigned for further proceedings.  (Doc. 17).  The District Court held that Plaintiff could join his FTCA action with his *Bivens* claim, and found that he stated an Eighth Amendment excessive force claim against Defendant Bronkoski.  The Court also had Plaintiff's Complaint served on Defendants.

On October 2, 2006, in response to the Complaint, Defendants jointly filed a Motion to Dismiss, or in the alternative, for Summary Judgment. (Doc. 34).  Defendants' Motion was briefed, Statement of Facts ("SMF") were filed, and exhibits were submitted.  Defendants' Motion was ripe for disposition.[7]  (Docs. 42-46).  Plaintiff filed a Motion to Compel on October 16, 2006, which was denied as moot by Order of January 29, 2007. (Docs. 40 and 68).

Since we considered the documents submitted by both parties which were outside of the pleading, we construed Defendants' Doc. 34 Motion as one for Summary Judgment.  *See* Fed. R. Civ. P. 12(b).  Both parties had ample opportunity to present evidence regarding their positions and both in fact did so.  (Docs. 43, 44, 46, 60).[8]

On February 5, 2007, we issued an R&R in which we recommended that Defendants' Summary Judgment Motion (Doc. 34) be denied with respect to Plaintiff's Eighth Amendment excessive force claim against CO Bronkoski.  It was further recommended that Defendants' Summary Judgment Motion be granted as to Plaintiff's FTCA action against the United States, since it was

---

[7]The undersigned was assigned this case for pre-trial matters.  See 28 U.S.C. §636(b)(1).

[8]Doc. 60 was a videotape submitted by Defendants which this Court ordered to be filed under seal.  Plaintiff was permitted to view the videotape by the Order.

4

immune from this action.  Finally, it was recommended that Judgment be entered in favor of the United States and against Plaintiff.  Additionally, we recommended that this case be remanded to the undersigned so that Defendant Bronkoski could be directed to file his Answer to the Complaint. (Doc. 69).

Plaintiff filed objections to our R&R, and on April 2, 2007, the District Court issued an Order and adopted our February 5, 2007 R&R.  (Doc. 75).  We then directed Defendant Bronkoski to file his Answer to the Complaint, and he did so with Affirmative Defenses on April 11, 2007.  (Docs. 77 and 78).  Discovery then ensued, including the deposition of Plaintiff.  (Doc. 85).

On October 9, 2007, Plaintiff filed a Notice with the Court in which he withdrew his claim that he suffered brain damage as a result of the alleged excessive force used on him by Defendant Bronkoski.  (Doc. 116).  Plaintiff stated that he was only proceeding on his claim that Defendant Bronkoski "used excessive force on Plaintiff by choking Plaintiff's neck and punching Plaintiff's head."  Plaintiff stated that he did not want the court to change his Eighth Amendment excessive force claim into a negligence claim for personal injury with respect to his brain damage.   Thus, Plaintiff concluded that he is only claiming that Defendant Bronkoski used excessive force on him by choking and punching him, and that he does not have to show permanent brain damage since he has withdrawn this claim.  Plaintiff contended that he only has to show that Defendant Bronkoski injured his neck through his medical records and that this will show that Defendant choked him. Plaintiff also argued that Defendant's requests for extensions of time so that Plaintiff could undergo an MRI of his brain were no longer necessary since he "officially dropped his brain damage claim."

(Doc. 116).[9]

On October 12, 2007, Defendant Bronkoski filed a Summary Judgment Motion. **(Doc. 117).** Defendant filed his support Brief with numerous attached Exhibits on October 26, 2007. (Docs. 118 and 118-2). Defendant also filed as an Exhibit, Doc. 119, copies of this Court's R&R in Plaintiff's prior civil rights action, Civil No. 04-1546, M.D. Pa., Docs. 103 and 106, and the District Court's Memorandum and Order adopting our R&R, in which we recommended that Plaintiff's Preliminary Injunction Motion in Case No. 04-1546 be denied. Defendant filed his SMF on October 26, 2007. (Doc. 12). On November 5, 2007, Plaintiff filed a Notice in which he requested that the Court consider his previously filed documents in opposition to Defendant's first Summary Judgment Motion, *i.e.*, Docs. 44-46, 65-66, 96-98, as his documents in opposition to Defendant's October 12, 2007 Summary Judgment Motion. (Doc. 121). Plaintiff stated that his documents and evidence, *i.e.* Plaintiff's Declaration and the Declaration of Inmate McKreith (Doc. 98), show that as a result of his altercation with Defendant on June 6, 2005, he suffered red marks and scratches on both sides of his neck. We shall consider Plaintiff's stated prior filings as being in opposition to Defendant's October 12, 2007 Summary Judgment Motion.

Plaintiff filed a Motion, along with a support Brief, on March 28, 2008, for the undersigned to expedite his R&R with respect to Defendant's October 12, 2007 Summary Judgment Motion. (Docs. 125 and 126). To the extent that we now issue the present R&R, we deem Plaintiff's Motion to expedite as being granted.

---

[9]*See* Doc. 91 and Doc. 115, p. 3, regarding Defendant's attempt to have an MRI of Plaintiff's head conducted to show Plaintiff did not suffer any brain damages during the June 6, 2005 incident.

As stated above, Defendant Bronkoski is the sole remaining Defendant in this case.  Plaintiff alleges that on June 6, 2005, Defendant Bronkoski used excessive force on him in violation of the Eighth Amendment when prison staff were trying to put another inmate (McKreith)[10] in Plaintiff's cell (cell D-212 in the Special Housing Unit ("SHU")) as his cellmate without giving Plaintiff prior notice. As stated, Plaintiff is only claiming that Defendant Bronkoski used excessive force on him by choking and punching him, and he  no longer claims that he also suffered permanent brain damage since he has withdrawn this claim.  (Doc. 116).  Originally, as stated, Plaintiff claimed that on June 6, 2005, Defendant Bronkoski violated the Eighth Amendment by "inflicting excessive force and cruel and unusual punishment on the Plaintiff, causing the Plaintiff to suffer mental anguish, pain and suffering and permanent brain damage, recurrent dizzy spells, and blurred vision." (Doc. 1, p. 2, ¶ IV.).  In his SMF, Defendant properly notes that since Plaintiff has withdrawn his brain injury claim, Defendant does not state  the facts related to this former claim of Plaintiff.  However, Defendant has submitted Plaintiff's prison medical records after his transfer to USP-Lewisburg through August 28, 2007.  (Doc. 120, p. 11, n. 3 and Doc. 118, Ex. 6).   Plaintiff also has previously submitted some of his medical records after his transfer to USP-Lewisburg.  (Doc. 97, Exs. 3 and 4).

---

[10]Inmate McKreith is the inmate who signed a Declaration which Plaintiff attempted to use in opposition to a summary judgment motion which Defendant did not have pending with the Court.  Doc. 98.  Plaintiff again offers McKreith's Declaration as evidence for his opposition to Defendant's present Summary Judgment Motion. *See* Doc. 121.

## II. Motion for Summary Judgment Standard.

The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

## III. *Bivens* Standard.

Under *Bivens*[11], the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal

---

[11]Recently, the Third Circuit in *Banks v. Roberts*, C.A. No. 07-2793, slip op. p. 2, n. 1, 2007 WL 3096585, * 1, n. 1 (3d Cir. 10-19-07) (Non-Precedential) noted that "A '*Bivens* action' is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials. This constitutional tort theory was set out in *Bivens* . . . "

right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992). Additionally, a defendant's conduct must have a close causal connection to the plaintiff's injury in order for liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).

## IV. Material Facts.

Since, as stated, Defendant has filed his SMF in support of his Summary Judgment Motion (Doc. 1203, ¶'s 1.-86.), and his facts are properly supported by citation to evidence, we shall adopt as our own all of Defendant's facts contained in his SMF that are supported by citation to evidence and that are not disputed by Plaintiff in his response to Defendant's SMF and through his evidence, *i.e.* his Declaration and McKreith's Declaration. (Docs. 46 and 98).   To the extent that Plaintiff's evidence disputes Defendant's facts detailed in their SMF, we shall not adopt Defendant's facts as our own.[12]

As stated, Plaintiff did not file a new response to each and every paragraph of Defendant's SMF as required by Local Rule 56.1, MD. Pa. Rather, Plaintiff has requested that the Court consider his prior filings and responses to Defendant's first Summary Judgment Motion as being his responses to Defendant's present Summary Judgment Motion. (Doc. 121).   While Plaintiff previously filed two statements of facts opposing Defendant's first Summary Judgment Motion (Docs. 45 and 96), both of these documents were filed before Defendant filed his present Summary Judgment Motion and

---

[12]Defendant has previously conceded that Plaintiff exhausted his BOP administrative remedies with respect to his *Bivens* claim.  Doc. 42, p. 1, n. 3.

SMF. (Docs. 117 and 120).[13]   Thus, Plaintiff has not properly responded, paragraph by paragraph to each and every one of Defendant's current SMF as he was required to do by Local Rule 56.1.

We find that Plaintiff, both in his prior responses to Defendant's previous SMF and in his Declaration, has not properly responded to Defendant's current SMF as required by Local Rule 56.1 of M.D. Pa. (Docs. 45 and 96 and 120). Defendant has offered evidentiary support for his stated factual paragraphs contained in his SMF. (Doc. 120, pp. 1-11). In his responses to Defendant's previous SMF (Doc. 43), Plaintiff (Doc. 45) only disputed certain paragraphs of Defendant's earlier SMF, namely, Paragraphs 6., 8.-15., 23.-24., 31., 33., 3 5., 48., 61., 67., and 78. Plaintiff's disputes of Defendant's stated paragraphs of his prior SMF were not all supported by citation to evidence, but most of the disputed paragraphs were supported by Plaintiff's Declaration. (Doc. 46). However, Plaintiff has failed to file a new response to Defendant's SMF presently before this Court as he was required to do. (Doc. 120).

Therefore, we will accept the stated facts contained in Defendant's present SMF that are supported by his evidence and that are not controverted by Plaintiff's prior responses to Defendant's earlier SMF or by his evidence (*i.e.* Plaintiff's Declaration & McKreith's Declaration), and we will adopt them as our own herein. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the

---

[13]We note that Plaintiff's Doc. 96 SMF opposing Defendant's second Summary Judgment Motion was filed about four months before Defendant even filed his second Summary Judgment Motion and SMF. (Docs. 96, 117 and 120).

record).[14]  We shall also include Plaintiff's facts averred in his Declaration.  (Doc. 46).  Therefore, we

adopt the following undisputed facts derived from Defendant's present  SMF (Doc. 120)[15]

as our own and incorporate them herein by reference: Paragraphs 1.-7., 9. 13., 17., 18., 19., 20.,

21., 23., 24.- 28., 29.,[16] 30.-32.,[17] 33.-37., 39.- 43.,[18] 44.-49., 50.-54., 55.,[19] 56.-57., 58.,[20] 59.-73.,

---

[14]*See also Paranich* District Court case at  286 F. Supp. 2d at 447, n. 3.

[15]To the extent that Defendant relies upon Plaintiff's testimony from his May 9, 2007 deposition in support of his present SMF, since Plaintiff's October 31, 2006 response to Defendant's prior SMF (Doc. 45) and his October 31, 2006 Declaration pre-date his May 2007 deposition, we shall adopt all of Defendant's present SMF which relate to Plaintiff's deposition testimony.  In any event, Defendant's evidence supports his SMF with respect to Plaintiff's deposition testimony.  (Doc. 118, Ex. 5).

[16]While Plaintiff previously disputed (Doc. 46, ¶ 8.) that Health Specialist Sarain documented that Plaintiff alleged he was hit in the back of the head, Defendant's present evidence support this.  *See* Doc. 120, ¶ 29.

[17]Defendant's SMF ¶'s 30.-32. are not disputed since Defendant's evidence supports them (Doc. 118, Ex. 1, Att. C), but Plaintiff avers that Sarain's June 6, 2005 Inmate Injury Assessment Report was false and that he was not given the chance to read and sign it.   (Doc. 46, ¶ 13.).

[18]With respect to ¶ 40.  of Defendant's SMF, Plaintiff states that he told Sarain on June 12, 2005, that he was having dizzy spells and blurry vision and not that he failed to receive an evaluation for his injuries. Doc. 45, ¶ 33.

[19] It is not disputed that Sarain noted on June 22, 2005, that Plaintiff had poor dietary habits, but Plaintiff claims that he did not tell Sarain this.  Doc. 45, ¶ 48.

[20]It is not disputed that Sarain noted on July 22, 2005, that he saw Plaintiff for complaints of blurred vision and unrelated right shoulder pain.  However, Plaintiff claims that he also complained of recurrent dizzy spells, headaches and blurry vision that was related to the June 6, 2005 incident.   Doc. 45, ¶ 61.

75.-78.,[21] and 79.-86.

Thus, we find that Plaintiff, through his prior filings (Doc. 45 and 46 and 96), has only disputed ¶'s 12., 14., 15., 16., 38., and 74., of Defendant's present SMF, Doc. 120.

As stated, Plaintiff has previously submitted some of his medical records after his transfer to USP-Lewisburg, including the April 20, 2007 evaluation by PA Rush. (Doc. 96, p. 1 and Doc. 97, Ex. 3).[22] Plaintiff states that on April 20, 2007, PA Rush at USP-Lewisburg assessed him as having "probable post concussive syndrome" from a questionable "June 05 head injury." (*Id*.). Defendant's present evidence does not, for the most part, dispute this. (Doc. 118, Ex. 6, ¶ 4. and Att. B). However, Defendant's evidence shows that on April 20, 2007, Plaintiff made the subjective complaint to PA Rush that he had been suffering from spontaneous dizzy spells that began after he was struck in the head in June 2005. (*Id*.). Plaintiff also refers to his exam by Dr. Bussanich on April 23, 2007. Plaintiff concludes that the only logical inference based on his medical records is that his vertigo/diplopia (double vision) was caused by Defendant Bronkoski's alleged punch to the back of

---

[21]It is not disputed that Plaintiff made no complaints of any injuries allegedly sustained in the June 6, 2005 incident at his November 18, 2005 evaluation, but Plaintiff claims that he made numerous complaints to the prison medical staff about recurrent dizzy spells and blurry double vision caused by the June 6, 2005 incident from the date of the incident through September 2005, until staff promised him an X-ray. Also, as of his October 19, 2006 Declaration, Plaintiff averred that he was still experiencing recurrent dizzy spells and blurry double vision caused by the June 6, 2005 incident. Doc. 45, ¶ 78. and Doc.46, ¶ 16.

[22]Plaintiff was transferred from USP-Allenwood to USP-Lewisburg on July 26, 2006. Plaintiff was transferred out of USP-Lewisburg on August 20, 2007, and he later arrived at FCC-Coleman, his current place of confinement. (Doc. 118, Ex. 6, Att. B). Defendant incorrectly notes that Dr. Bussanich details Plaintiff's medical care after his transfer to USP-Allenwood through August 2007. Doc. 118, p. 11, n. 3. Dr. Bussanich specifies Plaintiff's medical care after his transfer to USP-Lewisburg through August 2007.

his head since his prison medical records show that he never complained of vertigo/diplopia before

the June 5, 2006 incident. (Doc. 96, ¶ B.).

Dr. Bussanich avers as follows:

> On April 23, 2007, I again saw Freeman for an evaluation of his possible post concussion syndrome. At this time, Freeman stated that he was the victim of an assault in June 2005. Additionally, Freeman denied frequent headaches, and claimed that his dizziness was not related to stress or over exertion. Freeman also alleged that his dizzy spells were episodic with spontaneous resolution of symptoms. I noted no skin lesions, pupils responded to stimulation, no abnormal movement of the eyes, and Freeman's lateral pursuit was intact. Furthermore, [ ] I noted regular heartbeat, clear lungs, no bruising on the neck, and all of Freeman's sensory operations were intact. I diagnosed Freeman with possible diplopia (double vision/vertigo). I also noted that I was unsure whether this was a pre-existing condition. I ordered a MRI to help determine if their (sic) was an underlying cause to the diplopia/vertigo. Additionally, Freeman was prescribed meclizine to treat the vertigo.

Plaintiff has failed to file his paragraph-by-paragraph response to Defendant's current SMF,

and he had ample opportunity in which to do so. Nor has Plaintiff filed an updated brief opposing

Defendant's current Summary Judgment Motion as he was permitted to do. Further, Plaintiff has

failed to offer any new evidence in response to Defendant's present evidence (Doc. 118, Exs. 1-7).

As stated, we have reviewed Plaintiff's prior filings in opposition to Defendant's first Summary

Judgment Motion and his prior responses to Defendant's first SMF (Docs. 45, 46 and 96), and we

have considered them with respect to Defendant's current SMF, Doc. 120. However, it was

Plaintiff's obligation to file a new response to Defendant's present SMF.

In the case of *Barthalow v. David H. Martin Excavating, Inc.*, 2007 WL 2207897, * 1, n. 5,

(M.D. Pa. 2007), this Court noted:

> The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.* Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]. " *Id.* Only the first fourteen paragraphs set forth in Barthalow's opposing statement of facts (Doc. 27) correspond to those in DHM's (Doc. 22). Barthalow's paragraphs fifteen through twenty appear to set forth separate statements of fact and the Rule 56.1 statement as a whole does not provide clear responses to paragraphs fifteen through forty of DHM's statement. Accordingly, the court will deem the facts in paragraphs fifteen through forty of DHM's statement to be admitted.

*See also Dusenbery v. U.S.*, 2006 WL 218220, * 1 (M.D.Pa.2006) ("it appearing that defendants' statement of material facts was properly deemed admitted by plaintiff *see* L.R. 56.1 providing that the moving party's statement of material facts will be deemed admitted unless the non-moving party specifically contradicts the statement").

Plaintiff disputes paragraph 40. of Defendant's SMF (Doc. 120), and he states that on June 12, 2005, he told Sarain that he was having dizzy spells and blurry double vison. Plaintiff disputes that he told Sarain that he was not evaluated for injuries sustained from the June 6, 2005 incident. (Doc. 45, ¶ 33.). It does not appear that Plaintiff disputes Defendant's paragraph 42. of Defendant's SMF in that Plaintiff's June 6, 2005 medical evaluation was videotaped. (Doc. 120). In his October 19, 2006 Declaration, Plaintiff averred that CO Brown videotaped his evaluation by PA Sarain, but he averred that the CO did not tape a close-up of his injuries. Plaintiff also averred that the videotape will prove that he did complain that he was punched in the back of his head and had a

lump there. (Doc. 46, ¶'s 6-8).  Plaintiff also averred that PA Sarain did not document in writing his claim that he was punched in the head.  (*Id*., ¶ 8).  However, Plaintiff's own evidence, Doc. 44, Ex. 2, as well as Defendant 's evidence (Doc. 120, ¶ 29.), shows that in Plaintiff's June 6, 2005 injury evaluation, PA Sarain noted that Plaintiff stated "They hit me on the back of my head."  It was also noted that Plaintiff was unable to sign the medical evaluation form since he was handcuffed from behind.

In his October 19, 2006 response to Defendant's first SMF, Plaintiff questioned why Defendant did not produce  the videotape of his June 6, 2005 evaluation, Doc. 45, paragraph 35., but, as stated above, Defendant produced the videotape, and it was filed under seal.  (Doc. 60).  As to Defendant's SMF, Doc. 120, paragraphs 67.-68., Plaintiff agreed that during his September 27, 2005 sick call visit he complained of headaches and double vision, but he also claimed  that these ailments were related to the June 6 incident.  (Doc. 45, ¶ 61.).

The primary dispute between Plaintiff and Defendant CO Bronkoski centers around the June 6, 2005 incident and the interaction between Plaintiff and Defendant which is at issue in this case, and is the basis for Plaintiff's Eighth Amendment claim against CO Bronkoski.  *See* ¶'s 10.-21. of Defendant's SMF, Doc. 120,  and ¶'s 6., 8.-15. of Plaintiff's response to Defendant 's first SMF, Doc. 45, and Plaintiff's Declaration, Doc. 46, pp. 2-3.   Plaintiff also states that he made numerous complaints to the prison health services staff about his recurrent injuries  that he claims were caused by the June 6, 2005 incident.  In particular, Plaintiff averred  that he suffered headaches, dizzy spells and blurry double vision from June 2005 through September 2005, and he stated that, as of October 2006, he was still suffering from the stated ailments caused by the June 2005 incident.  (Doc. 45,

16

¶ 78.). Defendant's present evidence also shows that in April 2007, while at USP-Lewisburg, Plaintiff still complained to prison medical staff that he suffered headaches, dizzy spells and blurry double vision, from June 2005. (Doc. 118, Ex. 6, ¶'s 4.-5.).

Defendants essentially state from October 14, 2005 through July 3, 2006, when Plaintiff was seen by a health services staff member, he did not complain about any injuries allegedly sustained in the June 6, 2005 incident. (Doc. 120, ¶'s 71.-85.). On July 26, 2006, Plaintiff was transferred from USP-Allenwood to USP-Lewisburg. (*Id.*, ¶ 86.). As stated, while at USP-Lewisburg, Plaintiff did complain to the prison medical staff that he had been suffering from spontaneous dizzy spells that began after he was struck in the head in June 2005, and he was diagnosed with possible post concussion syndrome and possible double vision /vertigo. (Doc. 118, Ex. 6, ¶'s 4.-5.).

There is, however, no dispute that Plaintiff was issued an Incident Report (Code 224 offense) regarding the June 6, 2005 incident with Defendant Bronkoski, and that he had a disciplinary hearing on June 15, 2005. The DHO found that Plaintiff assaulted CO Bronkoski by bumping into the CO with his chest during the June 6, 2005 incident. There is no dispute that Plaintiff was afforded all of his due process rights concerning the disciplinary hearing, and that the DHO did not find Plaintiff's claim that he was choked and punched in the head during the incident to be supported by any evidence, *i.e.* either eyewitness statements or medical evidence. Plaintiff was sanctioned to 30 days disciplinary segregation, 27 days loss of good conduct time, as well as 3 months loss of commissary and telephone privileges. (Doc. 120, ¶'s 33.-34., 44.-49.).[23]

---

[23]The District Court has determined that Plaintiff's present Eighth Amendment claim against CO Bronkoski was not *Heck*-barred. (Doc. 17). The District Court found that the contact Plaintiff was convicted of initiating with Defendant Bronkoski occurred before the alleged

**V. Discussion.**

  *1. Eighth Amendment Excessive Force Claim*

The District Court has held that Plaintiff has stated an Eighth Amendment excessive force claim against Defendant Bronkoski and that it was not *Heck*-barred. (Doc. 17, pp. 5-7). The Court stated that even though the DHO found that Plaintiff assaulted CO Bronkoski by bumping into this CO with Plaintiff's chest during the June 6, 2005 incident, this fact does not preclude the possibility that Bronkoski responded to the bump with excessive force. (*Id.*, p. 6).

Thus, Plaintiff's Complaint has been found to state an Eighth Amendment excessive force claim against Defendant Bronkoski. As stated, in his Complaint, Plaintiff originally claimed that he suffered injuries after the alleged assault on the day in question in the nature permanent brain damage, recurrent dizzy spells and blurred vision. (*Id.*, p. 5 and Doc. 1, ¶ IV.). In his October 2006 Declaration, which Plaintiff is presently relying upon, Plaintiff averred that he was still experiencing "recurrent dizzy spells and blurry double vision stemming from Bronkoski choking and punching my head on June 6, 2005." (Doc. 46, ¶ 16.). Plaintiff also averred that the BOP staff would not give him a head x-ray, CAT scan or an MRI to show he had brain damage. (*Id.*). In his October 2006 response to Defendant's SMF filed with his first Summary Judgment Motion, Plaintiff also claimed that he still experienced recurrent dizzy spells and blurry double vision from the incident on June 5. (Doc. 45, ¶ 78.). As discussed above, Plaintiff has withdrawn his claim that he suffered brain damage from the incident on June 6, 2005. (Doc. 116). Thus, Plaintiff's prior averment that the prison medical staff failed to give him an MRI of his head with respect to his claim of brain damage,

───────────────────

punching and choking of Plaintiff by Defendant Bronkoski.

is no longer pertinent to this case.

There is no dispute that Plaintiff was in fact treated by the prison health services staff at USP-Allenwood after the incident on June 6, 2005, and subsequently for complaints of double vision and headaches as well as unrelated right shoulder pain.  (Doc. 120, ¶'s 35.-43., 51.-70.).  Plaintiff's last record indicating that he was seen by the medical staff at USP-Allenwood for complaints of dizziness and blurred vision was in October 2005, when he was given a new prescription for glasses.  (Doc. 118, Ex. 1, ¶ 22.).   After his transfer from USP-Allenwood, Plaintiff was also treated by the medical staff at USP-Lewisburg for complaints of spontaneous dizzy spells which he attributed to the incident on June 6, 2005.  (Doc. 118, Ex. 6).

During a September 27, 2005 sick call visit at USP-Allenwood Plaintiff continued to complain, in part, about headaches and double vision.  A radiological consultation was ordered so that Plaintiff's skull could be x-rayed.  However, Defendants contend that Plaintiff failed to show up for his October 2005 radiological consultation. (*Doc.* 120, ¶'s 67.-74.).   Defendants' Ex. 1 (Doc. 118, ¶ 15.  and Att. G) indicates that Plaintiff did not show up for the October 20, 2005 radiological consultation appointment.  Plaintiff has previously disputed that he failed to show up for his October 20 radiological consultation appointment and claimed  that he was not notified of this appointment by prison staff.  (Doc. 45, ¶ 67.).  The October 20, 2005 radiological consultation appointment was to perform a skull series of x-rays, and the reason for the appointment was that Plaintiff claimed he was hit in the back of his head in June 2005 and complained of dizziness and double vision.   In

October 2005, an optometrist found no problems with Plaintiff's eyes. (Doc. 120, ¶'s 75.-76.).[24]

As the District Court stated (Doc. 17, p. 5), Plaintiff claims to have suffered significant internal injuries, and we previously found that he alleged he suffered sufficiently serious conditions to establish a claim that Defendant Bronkoski was deliberately indifferent to his safety and that Bronkoski used force on him that was not needed. The question now becomes whether there are any genuine issues of material fact that are disputed regarding Plaintiff's remaining Eighth Amendment claim.

As his first argument, Defendant contends that Plaintiff has failed to state an Eighth Amendment excessive force claim since his actions on June 6, 2005, did not rise to the level of a Constitutional violation. (Doc. 118, p. 11). Defendant states that Plaintiff had no right to approve his cellmate or to prevent staff from adding a cellmate to Plaintiff's cell. In fact, Defendant states that the undisputed evidence shows that Plaintiff did not have any problems with McKreith being his cellmate. Defendant also states that the record is undisputed that Plaintiff had a history of violent behavior and that he was the aggressor in the June 6, 2005 incident. (*Id*.). Defendant points to Plaintiff's prior case filed with this Court, # 04-1546, in which the Court ruled on a Preliminary Injunction Motion which Plaintiff, in part, based it upon the June 6, 2005 incident with CO Bronkoski. This Court noted in recommending the denial of Plaintiff's Injunction Motion:

> Here, the evidence shows that Plaintiff was the aggressor in the
> June 6, 2005 incident with C.O. Bronkoski. In fact, according
> to Plaintiff's own admission in his Brief (Doc. 87, p. 2), Plaintiff

---

[24]In 2007, Plaintiff was scheduled for an MRI of his head, but he refused to have it and signed a Medical Treatment Refusal Form on August 8, 2007. (Doc. 118, Ex. 7, ¶'s 6.-11.). In any event, Plaintiff has now withdrawn his claim that he suffered brain damage.

was belligerent at his cell door and did not move when the C.O.'s
tried to enter, and t heir bodies bumped and collided.

(Doc. 119, p. 13, n. 10).[25]

Defendant Bronkoski argues that he and CO Neylon applied only the amount of force which was necessary to restore order on June 6, 2005.  (Doc. 118, p. 12).  He states that the amount force he used was *de minimis* and done  to restore the order and security of the prison.   (*Id.*).  Defendant states that the  medical records indicate that Plaintiff only suffered a minor abrasion to his right elbow from the incident and that his own conduct created the situation where the use of force was necessary since he was belligerent and would not move from his cell door when Defendant tried to enter.  (*Id.*).

Previously, this Court found that Plaintiff had alleged with sufficient specificity the personal involvement of Defendant Bronkoski and that he had  adequately stated what this Defendant did to violate his Eighth Amendment rights.   The Court is now presented with a Summary Judgment Motion regarding Plaintiff's sole remaining Eighth Amendment excessive force claim against Defendant Bronkoski.

The Court in *Bright v. Gillis*, 89 Fed. Appx. 802, 805 (3d Cir. 2004), stated the factors in establishing an Eighth Amendment excessive force claim against prison staff:

> a number of factors bear on an excessive force determination, including:
> "(1) the need for the application of force; (2) the relationship between
> the need and the amount of force that was used; (3) the extent of the
> injury inflicted; (4) the extent of the threat to the safety of staff

---

[25]The District Court adopted this Court's R&R regarding Plaintiff's Injunction Motion in case #04-1546.  Doc. 119.

> and inmates, as reasonably perceived by responsible officials on
> the basis of facts known to them; and (5) any efforts made to temper
> the severity of the forceful response." *Brooks v. Kyler,* 204 F.3d
> 102, 106 (3d Cir. 2000) (citing *Whitley v. Albers,* 475 U.S. 312, 327,
> 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

*Id.*

The Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *6 (E.D. Pa.), stated:

> "The core inquiry in claims of excessive force is 'whether force was
> applied in a good-faith effort to maintain or restore discipline,
> or maliciously and sadistically to cause harm'." (Citing *Hudson v.
> McMillian,* 503 U.S. 1, 7 (1992)).

The *Wesley* Court also stated:

> While the Eighth Amendment's proscription against cruel and unusual
> punishment excludes from constitutional recognition *de minimis* uses of
> physical force if the use of force is not of a sort "repugnant to the
> conscience of mankind," to state a claim, the plaintiff need only allege
> that force was maliciously applied to cause harm." *Id.* (Citation omitted).

*Id.*

The Court in *Eppers v. Dragovich*, 1996 WL 420830 (E.D. Pa.), stated:

> "In *Hudson*, the Supreme Court held that an inmate need not suffer
> a serious injury in order for the excessive use of force to violate
> the Eighth Amendment.. However, the Court also recognized that
> not "every malevolent touch by a prison guard gives rise to a federal
> cause of action," and reaffirmed that the Eighth Amendment's prohibition
> of cruel and unusual punishment "necessarily excludes from
> constitutional recognition *de minimis* uses of physical force, provided
> that the use of force is not of a sort  'repugnant to the conscience of
> mankind.' " (citing *Hudson, supra* at 9).

The Court in *Moon v. Dragovich*, 1997 WL 180333 *4 (E.D. Pa.), stated the standard as follows:

> The Supreme Court has differentiated between excessive force cases and cases in which prison officials fail to prevent harm in determining the proof required to meet the two prongs of an Eighth amendment violation. *Compare Farmer,* 114 S.Ct. at 1977 ("For a claim ... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."); *id.* at 1979 (prison official must be deliberately indifferent to substantial risk of harm); *with Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ("**[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial standard is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.**"); *id.* at 9 (objective prong can be established even if excessive force does not cause serious harm). Whether the court judges Thomas' conduct under the failure to prevent harm rubric or the excessive force rubric, [FN3] Moon must show that he has suffered more than *de minimis* harm:
>
> Not ... every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort " 'repugnant to the conscience of mankind.' "

*Hudson,* 503 U.S. at 9; *see also Farmer,* 114 S.Ct. at 1977 (requiring risk of *serious* harm). (Emphasis added).

In our case, Plaintiff alleged that Defendant Bronkoski entered his cell on June 6, 2005, to house another inmate (McKreith) in his cell, and that he was standing in the threshold of the cell door. Plaintiff alleged that Bronkoski entered his cell, that he did not handcuff Plaintiff in violation of BOP regulation 28 C.F.R. § 552.20, and that Bronkoski attempted to shove him out of his way, but he stood firm. Plaintiff then alleged Bronkoski slammed him on his bed, choked his neck and

throat, threw him on the floor and punched him in the back of his head.  (Doc. 45, ¶'s 12.-14.  and Doc. 46, p. 3).  As stated, the District Court has previously found that Plaintiff alleged serious injuries as a result of the June 6 incident.  (Doc. 17, p. 5).  Plaintiff claimed  that Defendant Bronkoski's conduct violated the Eighth Amendment and BOP regulations which prohibit corporal punishment. Plaintiff averred that he never punched, kicked, head butted, spit, or bit any CO during the June 6 incident.   (Doc. 46, p. 3).

Plaintiff's Exhibits #1 and # 3 attached to his Complaint (Doc. 1) and Ex. 2 attached to his prior opposition Brief (Doc. 44), upon which Plaintiff again relies with respect to Defendant's current Summary Judgment Motion, and Defendant's Ex. 1, Att. C, Doc. 118, indicate that, according to the prison medical records, Plaintiff was seen by L. Sarain, Prison Health System Specialist, on June 6, 2005, and only a superficial abrasion to Plaintiff's right elbow was noted, with no medical treatment needed.  Plaintiff had no contusion, abrasion or laceration to his head, face, and neck.  A small abrasion to his right elbow was also noted.  (*Id*.).  No abrasion, laceration or contusion were found on Plaintiff's back and chest.  It was noted  that x-rays were "not indicated" as being necessary.  The plan and diagnosis was "no medical intervention needed."  (*Id*.).  As stated, it was noted on the form that Plaintiff was unable to sign since he was handcuffed from behind.  (*See also* Doc. 43, Ex. 1, Att. C).  The record also shows that CO Bronkoski suffered no physical injuries as a result of the June 5, 2006 incident with Plaintiff.  (Doc. 118, Ex. 1, Att. B.).

Plaintiff averred that PA Sarain "forged a false medical/injury assessment report" on June 6, 2005.  (Doc. 46, p. 3, ¶ 13.).  Plaintiff averred  that he was not shown or allowed to sign this assessment report "because he [Sarain] knew I would object to his falsified report."  (*Id*.).   Plaintiff

claimed  that he could have been simply allowed to sign the report later after his handcuffs were removed.

As mentioned in the Defendant's present undisputed SMF (Doc. 120, ¶'s 39., 58. ), Plaintiff was treated in June and July 2005 for complaints of double vision and headaches (June only), and his blood pressure was a little high, but his heart was normal.  A blood test and eye appointment for Plaintiff were ordered.  The eye doctor found Plaintiff's eyes to be normal in his September 21, 2005 exam, and a new eyeglass prescription was provided for Plaintiff.  A follow-up eye exam was ordered to address Plaintiff's complaints of double vision.  On September 27,  2005, Plaintiff again reported headaches and double vision, and a radiological consultation was ordered so that an x-ray of Plaintiff's skull could be taken.  At an October 14, 2005 exam, Plaintiff complained about right shoulder pain but did not make any complaints of any injuries allegedly suffered in the June 6, 2005 incident with Defendant.  (*Id*., ¶'s 64.-73.).

The parties agreed that Plaintiff did not appear at his October 20, 2005 radiological consultation for his x-ray, but disagreed as to why.  Plaintiff averred that the prison staff never advised him of his October 20 appointment, and he  stated  that he in October 2006, he  was still waiting for his x-ray.  Plaintiff averred that BOP staff failed to give him a head x-ray since it would have shown that he had brain damage from the incident at issue.  There is no dispute that Plaintiff was later scheduled for an MRI and that he refused to have one.  Plaintiff then withdrew his claim of brain damage from this action.  (Doc. 116).

It is undisputed that no problems  with Plaintiff's eyes were found at his follow-up evaluation by the optometrist on October 26, 2005.  After Plaintiff's September 27, 2005 exam, after he was

given his prescription for new glasses,  Plaintiff did not make any further  complaints of dizziness and blurred vision while he was at USP-Allenwood.  (Doc. 120, ¶' 75.-85.).  However, after his transfer to UPS-Lewisburg, Plaintiff averred that he still suffered from recurrent dizzy spells and double vision.  (Doc. 46, ¶ 16.).  Dr. Bussanich also avers that Plaintiff complained about such ailments at UPS-Lewisburg and that Plaintiff claimed they were the result of the June 6, 2005 incident.  (Doc. 118, Ex. 6).

We have previously disagreed with Defendant's contention, which he again raises (Doc. 118, p. 12),  and found that, based on the record, it was disputed as to whether CO Bronkoski used only the minium amount of force, *i.e. de minimis*, necessary to restrain Plaintiff.  We agreed with Defendant that Plaintiff admitted he would not move out of the way when CO Bronkoski entered his cell on June 6 and "stood firm" (Doc. 46, p. 2, ¶ 4.), and that based on this Court's injunction ruling in Plaintiff's prior case, 04-1546, the bodies of Plaintiff and Bronkoski bumped.  As stated, Plaintiff was found to be the aggressor with respect to the bumping incident, and he was found guilty of such charges Defendant filed against him by the DHO.  (Doc. 120, ¶'s 44.-49.).   Following this contact, the evidence is disputed as to the amount of force Bronkoski then used on Plaintiff and whether it constituted an unnecessary and wanton infliction of pain.  Plaintiff's version of the events after he stood firm and his body and Bronkoski's body bumped is disputed by Defendant.  We previously found that if  Plaintiff was  found credible by a fact finder, the use of force he averred CO Bronkoski applied  could be found "repugnant to the conscience of mankind."

We have agreed with Defendant that the evidence, including the videotape depicting Plaintiff's June 6, 2005 medical assessment (Doc. 57), viewed in light most favorable to Plaintiff,

showed  that Plaintiff, externally, suffered only *de minimis* injuries after the June 6 incident.  As Defendant again points out,  the extent of Plaintiff's injuries is one factor to be considered.  Plaintiff claims that he still is internally suffering the effects from the June 6, 2005 incident in the nature of dizziness and double vision, and that there is medical evidence to support these claims, *i.e.* PA Rush's April 20, 2007 exam of Plaintiff and Dr. Bussanich's April 23, 2007 exam of Plaintiff.  (Doc. 118, Ex. 6).  Plaintiff's complaints of continual dizziness and double vision, have been established by the medical evidence, and thus are not disputed.  Moreover, even though Plaintiff suffered only *de minimis* injury externally, and there is evidence that he was still suffering from spontaneous dizziness and double vision, we now find that it is not disputed that the force, after the bumping of Plaintiff and CO Bronkoski, was applied in a good-faith effort to maintain and restore discipline.  We find that the undisputed evidence shows that the force Defendant applied was not maliciously and sadistically used to cause harm to Plaintiff.

As the *Bright* Court indicated, factors the Court must consider in deciding an Eighth Amendment excessive force are "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the  injury inflicted,  the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them, and any efforts made to temper the severity of the forceful response." In applying the stated factors to our case, we agree with Defendant (Doc. 118, p. 12) and find that Defendant and CO Neylon "used the minimum amount of force necessary to restrain Freeman and to prevent injury to themselves, Freeman, and other staff and inmates in accordance with the BOP's policy on the immediate use of force ... ."

27

In our case, as discussed, Plaintiff stated that on June 6, 2005, Defendant Bronkoski and CO White pinned him to the bed while Bronkoski choked his throat, then slammed him on the floor and Defendant punched him in the back of his head.   (Doc. 46, ¶ 4.).  The incident alleged took place when the CO's were attempting to place another inmate (McKreith) in Plaintiff's cell.[26]

Plaintiff averred that upon the CO's entering his cell, no handcuffs were placed on him and that the CO's were simply trying to place another inmate to be celled with Plaintiff.   Plaintiff admitted that he would not move from the cell entrance and that he was not receptive to having a cell mate without his prior approval.   Thus, we agree with Defendant that the record shows that Plaintiff was the instigator of the incident and that the force he [Defendant] used was measured to meet the legitimate penological interests of restoring order and protecting the safety of staff and the inmates.

As the Court in *Washington v. Klem*, 497 F. 3d 272, 283 (3d Cir. 2007), recently stated:

> Interests of safety and health play a particularly important role
> in the institutional setting. *Williams v. Morton,* 343 F.3d 212, 218
> (3d Cir.2003) (stating that "when a challenged regulation implicates
> security ... judicial deference is especially appropriate") (internal
> quotation omitted); *Lovelace,* 472 F.3d at 210-11 (Wilkinson, J.,
> dissenting) (chastising the majority for not properly accounting for
> the prison's compelling interest in safety and security). The Supreme Court

---

[26]In his support Declaration in Civil No. 04-1546, Plaintiff averred as follows with respect to the events that occurred on June 6, 2005, while CO's Bronkoski and White were attempting to place another inmate in Plaintiff's cell.  Plaintiff averred that the CO's failed to handcuff him before they entered his cell and that he questioned them as to why they were not checking with him first to see if he had a problem with the other inmate before they were celled together. Plaintiff stated that the CO's tried to push him back in the cell, but he stood firm, and their bodies then bumped and collided.  (Doc. 87, p. 2, Civil No. 04-1546).

in *Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d
1020 (2005), *repeatedly referenced* the importance of according deference
to prison authorities' choices about how to run their institution.

It is undisputed that Plaintiff was belligerent at his cell door on June 6, 2005, and failed to

move to the side when Defendant tried to enter his cell.  Plaintiff and Defendant bumped, and

Plaintiff was found guilty of assaulting Defendant as a result of this physical contact.  Plaintiff had no

problems with inmate McKreith and there were no reasons as to why McKreith could not be celled

with Plaintiff.  Seemingly, Plaintiff was upset with the double celling since he was not informed of

it and he was not involved with the choice of his cell mate before Defendant brought McKreith to

his cell on June 6.  (Doc. 120, ¶'s 12.-17.).

Range Officer Neylon, in his Declaration describes the June 6 incident as follows:

On June 6, 2005, at approximately 1:00 p.m., Officer D.  Bronkoski
and Officer C.  White, escorted inmate Wilbert McKreith, register
number 1438-050, from cell B-211 to Cell D-212 in the Special
Housing Unit (SHU) at USP Allenwood.  I was the range officer
and was located at the end of the range.  At that time, Freeman was
the only inmate occupying cell D-212.

Upon arriving at cell D-212, Officer Bronkoski ordered Freeman
to step to the back of the cell.  At this time, Freeman appeared
calm and complied with the order.

As Officer Bronkoski attempted to place inmate McKreith into the
cell, Freeman became agitated and began yelling, "You don't know
who you are messing with.  I don't want a cellie."

As I heard Freeman become agitated, I began to walk down
the range in order to provide additional assistance to Officer
Bronkoski and Officer White at cell D-212 in case it was needed.

Officer Bronkoski attempted to talk with Freeman and calm
him down, but Freeman proceeded [to] rush forward from the back
of the cell and bump Officer Bronkoski's chest with his chest.

> Officer Bronkoski proceeded to place Freeman on the bed
> in an attempt to regain control of the situation.  During the
> course of the struggle, Freeman was eventually placed on the floor.
>
> Officer White secured inmate McKreith, who was compliant during
> the situation, and I assisted Officer Bronkoski in securing Freeman.
>
> Freeman was placed in restraints and immediately calmed down.
>
> After staff exited the cell, the restraints were removed without
> further incident.
>
> The Lieutenant's Office was notified and the Health Services
> Unit was contacted so an injury assessment could be performed
> on Freeman and myself.
>
> At no time was Freeman choked or punched in the back of the head.

(Doc. 118, Ex. 3, ¶'s 2.-12.).

We do not find that McKreith's Declaration disputes the version of the June 6 incident as recited by Defendant and Neylon.  McKreith simply avers that he saw "two officers engage in a physical struggle with Freeman which looked like  wrestling and fighting", and that he saw "he two officers pin Freeman to his bed and then throw him on the floor inside cell DIS 212 of the [SHU] of USP Allenwood ... ."  (Doc. 98).  These averments certainly do not dispute Defendant's evidence that the force he used was necessary to restore order at the prison and to protect the safety of staff and the inmates.   As Defendant states (Doc. 118, p. 12), "in a situation such as this, where Freeman's own conduct created a situation where the use of force became necessary, it cannot be said that the use of force was 'repugnant to the conscience of mankind'."

Thus, we find no dispute that Defendant reasonably perceived a threat to staff and other inmates based on Plaintiff's conduct on June 6, Plaintiff's initiation of physical contact with staff, and

30

that Defendant used only the amount of force necessary to restore order and regain control of the situation.   There was an obvious and undisputed need for force based on Plaintiff's belligerent conduct on June 6, 2005.  Further, we find that the amount of force Defendant used to restore order was tempered and was reasonably perceived by Defendant as required in light of the uncontested threat Plaintiff posed to staff.

As discussed, there is no dispute that the external injuries  to Plaintiff were quite minimal even if McKreith's averments are believed that he saw "scratches and bruises on both sides of Freeman's neck and a bruise on his right elbow area." (Doc. 98). Plaintiff's claim of internal brain damage from the incident has been withdrawn. (Doc. 116).   Thus, he now only claims that Defendant choked him and punched him in the back of the head.   While Plaintiff claims that this caused him to suffer from recurrent blurry double vision and dizzy spells, and while Plaintiff has been treated for such complaints at USP-Lewisburg in April 2007, and he was diagnosed with possible post concussion syndrome and possible double vision/vertigo (Doc. 118, Ex. 6), there is absolutely no medical evidence that links these subjective symptoms of Plaintiff to the June 6, 2005 incident with Defendant.  Regardless, as discussed, we have found that the force used by Defendant on June 6 was necessary to restore order and protect staff, and that it was properly tempered to the threat.

Thus, we shall recommend that Defendant CO Bronkoski's Summary Judgment Motion **(Doc. 117)** be granted with respect to Plaintiff's *Bivens* claim under the Eighth Amendment for excessive force.

## VI.  Recommendation.

Based on the foregoing, it is respectfully recommended that Defendant Bronkoski's Summary Judgment Motion **(Doc. 117)** be granted with respect to Plaintiff's Eighth Amendment excessive force claim against him.   Further, it is recommended that Judgment be entered in favor of Defendant and against Plaintiff.


<u>**s/ Thomas M.  Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April18, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHERWYN FREEMAN, JR.,                    :          CIVIL ACTION NO. **3:CV-05-2596**
                                         :
                 Plaintiff               :          (Judge Munley)
                                         :
        v.                               :          (Magistrate Judge Blewitt)
                                         :
DARYL BRONKOSKI, et al.,                 :
                                         :
                 Defendants              :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 18, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

33

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                      **s/ Thomas M. Blewitt**
                                                      **THOMAS M. BLEWITT**
                                                      **United States Magistrate Judge**


**Dated: April 18, 2008**