# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHERWYN D. FREEMAN, JR.,** | : | No. 3:05cv2596 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **DARYL BRONKOSKI,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are plaintiff's objections (Doc. 130) to the report and recommendation of Magistrate Judge Thomas M. Blewitt (Doc. 127), which proposes that we grant defendant's motion for summary judgment.

**Background**

The plaintiff in this matter is an inmate currently housed at the United States Prison in Big Sandy, Kentucky. At the time of the incident that gave rise to this litigation, he was an inmate at the United States Prison in Allenwood, Pennsylvania. Defendant Daryl Bronkoski is a correctional officer at that facility.

The events in question occurred on June 6, 2005. On that date, Defendant Bronkoski and another correctional officer, Officer White, were escorting an inmate, Wilbert McKreith, from a cell in one housing unit to plaintiff's cell in another housing unit. (Defendant's Statement of Material Facts (Doc. 120) (hereinafter "Defendant's Statement") at ¶ 6). At the time, Plaintiff Freeman was the only inmate in his cell. When the three men arrived at plaintiff's cell, Defendant Bronkoski ordered plaintiff

to step to the back of his cell. (Id. at ¶ 10). At first, plaintiff behaved calmly and complied with this order. (Id. at ¶ 11). The attempt to place McKeith in plaintiff's cell, however, agitated him. (Id. at ¶ 12). He began yelling at Defendant Bronkoski, insisting that "[y]ou don't know who you are messing with. I don't want a cellie." (Id. at ¶ 12). Bronkoski attempted to talk with plaintiff and calm him down. (Id. at ¶ 15). Freeman, according to the defendant, rushed to the front of the cell and bumped Bronkoski chest-to-chest. (Id.). Plaintiff does not deny that he was belligerent towards the defendant, nor does he deny that he refused an order to allow defendant, another guard, and McKeith to enter his cell, but alleges that his refusal caused defendant to push his way into the cell. (Defendant's Deposition, Exh. 5 to Defendant's Statement at 16-18).

After plaintiff adamantly refused defendant's orders, defendant attempted to regain control of the situation by placing plaintiff on the bed in his cell. (Defendant's Statement at ¶ 16). According to plaintiff, defendant also choked him, threw him to the floor, and punched him in the back of his head. (Id. at ¶ 19). Defendant insists that he moved plaintiff to the floor only in an effort to regain control over him. (Id. at ¶ 21). After officers placed plaintiff in restraints, he calmed down. (Id. at ¶ 23). During the incident, Officer White had secured inmate McKreith. (Id. ¶ 22). Another Officer, Neylon, had assisted Bronkoski in securing the plaintiff. (Id. at ¶ 22). Once plaintiff calmed down and staff left his cell, officers removed the restraints. (Id. at ¶¶ 23-24.

2

Wilbert McKeith, the inmate being escorted to plaintiff's cell at the time of the incident, submitted a written declaration to the court. In that declaration, McKeith swore that "two of the escorting officers walked inside of Freeman's cell . . . [and] engaged in a physical struggle with Freeman which looked like wrestling and fighting." (Affidavit of Wilbert McKeith (Doc. 98)). McKeith testified that plaintiff had not been placed in any handcuffs or other restraints. (Id.). The two officers, McKeith contended, "pin[ned] Freeman to his bed and then [threw] him on the floor inside [his] cell." (Id.).

Both plaintiff and defendant received medical assessments after the incident. (Id. at ¶ 25). Defendant had no physical injuries and needed no medical attention. (Id. at ¶ 27). When the medical officer examined plaintiff, he complained of being hit on the back of the head. (Id. at ¶ 29). The officer did not notice any contusions, abrasions or lacerations on plaintiff's head. (Id. at ¶ 30). The only injury he recorded was a "small abrasion to [the] right elbow." (Id. at ¶ 31). Plaintiff received no other medical treatment at that time. (Id. at ¶ 32). The next day, plaintiff complained to another member of the prison's medical staff of red marks and scratches to both sides of his neck. (Id. at ¶ 36). The staff member who evaluated plaintiff concluded that those marks were fresh. (Id. at ¶ 37). Another evaluation, on June 12, 2005, found that plaintiff had no difficulty moving and did not appear in distress. (Id. at ¶ 41).

Plaintiff saw the same medical officer on June 22, 2005. (Id. at ¶ 50). At this

3

time, he complained of a headache and double vision. (Id. at ¶ 51). The medical officer checked plaintiff's blood pressure, advised him about proper eating habits, and scheduled a blood test and eye appointment. (Id. at ¶¶ 55-56). Plaintiff saw the same officer on July 22, 2005, this time complaining of shoulder pain as well as blurred vision. (Id. at ¶ 58). During an August 2, 2005 examination and consultation, plaintiff blamed in sore shoulder on weight lifting. (Id. at ¶ 61). The examination did not reveal any injuries beyond a reduced range of motion. (Id. at ¶ 62). Plaintiff saw an optometrist on September 21, 2005. (Id. at ¶ 64). The optometrist found that plaintiff's eyes were normal, but gave him a new eyeglass prescription. (Id. at ¶¶ 65-66). In a series of medical examinations performed over the next ten months, plaintiff made no complaints about injuries related to the June 6, 2005 incident. (Id. at ¶¶ 73, 78, 81, 83, 85). He presented with a variety of health issues, from shoulder pain to ear troubles, but did not relate any of them to the alleged attack in his cell. (Id.).

Plaintiff filed the instant complaint on December 16, 2005 (Doc. 1). The complaint described the incident in plaintiff's cell and raised a Federal Tort Claims Act action against the United States and a Bivens claim against Defendant Bronkoski,[1] alleging that defendants violated his Eighth Amendment right to be free of excessive force and cruel and unusual punishment. Plaintiff claimed that defendants' actions caused him to suffer mental anguish, pain and suffering,

---

[1] Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

permanent brain damage, dizzy spells and blurred and double vision.  The complaint seeks $3,000,000 in compensatory damages.

Magistrate Judge Blewitt gave the complaint an initial screening pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915.  (See Doc. 7).  He recommended that the court  find that plaintiff could not jointly bring Bivens and Federal Tort Claims Act actions, and that plaintiff could not state an Eighth-Amendment Bivens claim because he had not alleged that he had suffered significant injuries and had been found to be the aggressor in the dispute with Defendant Bronkoski.  This court declined to accept this report and recommendation, finding that plaintiff had sufficiently pled his excessive force claim under the Eighth Amendment.  (Doc. 17).  The court also concluded that plaintiff could join his FTCA action with his Bivens claim.  The parties then engaged in discovery, and defendants filed a motion to dismiss, which the magistrate judge construed as a motion for summary judgment.  The magistrate judge proposed that the court grant that motion with respect to the United States, but deny it with respect to Defendant Bronkoski.  (Doc. 69).  The magistrate judge also recommended that Bronkoski be directed to answer the complaint.  The court adopted that report and recommendation.  (Doc. 75).  The parties then engaged in discovery.

At the close of the discovery period, Defendant Bronkoski filed a motion for summary judgment, which is the subject of the instant report and recommendation.  On April 18, 2008, the magistrate judge filed his report and recommendation.  (Doc.

127). The magistrate judge recommended that we grant summary judgment to Defendant Bronkoski. Plaintiff then filed objections to the report and the government briefed the issue, bringing the case to its present posture.

**Jurisdiction**

Because plaintiff brought this suit pursuant to federal law, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

Before the court is the Magistrate Judge's recommendation that we grant Defendants' motion for summary judgment. Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Plaintiff objects to the magistrate judge's recommendation that the court grant summary judgment to Defendant Bronkoski on his excessive-force claim. He argues that a jury could conclude that Defendant Bronkoski's actions constituted excessive force and caused him injuries that included a concussion and long-term vision problems. Plaintiff contends that the magistrate judge erred in finding that Defendant Bronkoski used only the force necessary to subdue him, since plaintiff presented evidence by which a jury could conclude that defendant threw plaintiff to the floor of his cell and hit him on the back of the head after subduing him. Such actions, plaintiff contends, constitute excessive force and make summary judgment inappropriate.

Here, the magistrate judge found that the combination of plaintiff's aggression towards Defendant Bronkoski, Bronkoski's need to subdue plaintiff and maintain order, and the minor nature of plaintiff's injuries all indicated that no reasonable jury could conclude that plaintiff had been the victim of an application of excessive force. The Third Circuit Court of Appeals has noted that "[a]fter conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000). In considering such a claim, the fact-finder must determine "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

When "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," summary judgment is inappropriate for the defendant. Id. (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)). Five factors apply in determining whether a correctional officer used excessive force: "(1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of the injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of the response.'" Id. (quoting Whitley, 475 U.S. at 321).

The court agrees with the magistrate judge that Defendant Bronkoski is entitled to summary judgment on plaintiff's excessive force claim. The court will examine each of the five factors laid out in Brooks to explain why no reasonable juror could find for the plaintiff under the circumstances. First, the undisputed evidence here indicates that a need for the application of force clearly existed in the situation that confronted Defendant Bronkoski: plaintiff disobeyed a direct order, became belligerent, and raised a threat to Bronkoski. No reasonable juror could find that some sort of force was appropriate under the circumstances.

Second, the undisputed evidence also indicates that the circumstances justified Bronkoski's use of strong physical force against plaintiff, who had not initially been restrained and disobeyed a direct order; he thus had made himself a threat to

the guard's safety. Tackling the plaintiff and wrestling him to the ground–as described by plaintiff and McKreith, plaintiff's new cellmate–were necessary under the circumstances.

A key fact in this case is that plaintiff was not handcuffed or restrained in another way when the confrontation with Defendant Bronkoski occurred. More extensive force to subdue a potentially violent inmate was therefore reasonable. This case is not like Brooks, where guards used excessive force in beating a shackled prisoner who did nothing more than ask them why his prison-approved phone call had been abruptly terminated. Brooks, 204 F.3d at 104; see also Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (finding that "[p]unching and kicking someone who is handcuffed behind his back and under the control of at least six prison guards as he is being thrown into cabinets and walls is 'repugnant to the conscience of mankind,' absent the extraordinary circumstances necessary to justify that kind of force.") (quoting Hudson v. McMillian, 503 U.S. 1, 9-10 (1992)). Thus, a reasonable juror would be forced to conclude that the situation required the application of physical force used under the circumstances, and could not find the defendant's behavior repugnant. See Hudson, 503 U.S. at 9-10 (finding that not "every malevolent touch by a prison guard gives rise to a federal cause of action" and "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of

10

mankind.'"); Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (finding that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

Third, plaintiff's injuries, which contemporaneous medical reports indicate were not severe, also indicate that the force used to subdue a resisting prisoner and protect the guard was not excessive. While a lack of serious injury does not preclude a jury from finding for the plaintiff on an excessive force claim, a reasonable juror would have to conclude, based on the evidence of plaintiff's strong resistance to the guard's orders and the minor scrapes and brusies that resulted from plaintiff's encounter with Bronkoski, that the force used by the defendant to subdue plaintiff was not excessive. See, e.g., Brooks at 108 (finding that "[a]lthough the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used (the blows).").

Fourth, a reasonable juror would have to conclude that plaintiff's actions represented a serious threat to the health and safety of Defendant Bronkoski and other guards at the institution. Plaintiff admits that he belligerently refused to follow defendant's orders.[2] A reasonable juror would undoubtedly find that Bronkoski reasonably believed that he had to physically subdue the plaintiff in order to protect

---

[2]The court emphasizes, however, that a mere refusal to follow a correctional officer's orders does not give that officer license to take any degree of physical force he desires against the offending inmate. Force becomes excessive when it is used not to subdue but to punish.

11

himself and others, especially since plaintiff was not restrained at the time the incident began.

Fifth, the court finds that the plaintiff's aggressive behavior towards defendant and the need to take him under control, combined with the minimal injuries to plaintiff in that situation, indicate that a juror would have to find that Bronkoski limited the severity of his response.

In sum, then, no reasonable juror could find that the force employed by Bronkoski was excessive. Plaintiff's aggressive behavior mandated that defendant respond with subduing force. He did so. Slight injuries to the plaintiff resulted, but a reasonable juror would have to find that these injuries were an inevitable result of the dangerous confrontation. The Third Circuit Court of Appeals has emphasized that "'the pivotal inquiry in reviewing an inmate's § 1983 claim for excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (quoting Brooks, 204 F.3d at 106). No evidence indicates that the force defendant applied was intended maliciously and sadistically. Instead, defendant struggled to subdue plaintiff, who had made himself a danger. Accordingly, the court will adopt the magistrate judge's report and recommendation.

**Conclusion**

Because the plaintiff has submitted no evidence by which a reasonable juror could conclude that Defendant Bronkoski used excessive force against plaintiff on

12

June 6, 2005, the court will grant Defendant Bronkoski's motion for summary judgment.[3] An appropriate order follows.

---

[3]Plaintiff also filed a motion for the court to expedite its decision on his objections. That motion is now moot, and the court will deny it.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHERWYN D. FREEMAN, JR.,** | : | No. 3:05cv2596 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **DARYL BRONKOSKI,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 24th day of September 2008, the plaintiff's objections (Doc. 127) to the report and recommendation (Doc. 130) of Magistrate Judge Thomas M. Blewitt are hereby **OVERRULED**. The report and recommendation is **ADOPTED**. The defendant's motion for summary judgment (Doc. 117) is **GRANTED**. Plaintiff's motion to expedite the court's ruling on his objections (Doc. 132) is hereby **DENIED AS MOOT**. The Clerk of Court is directed to **CLOSE** the case.

                                      **BY THE COURT:**

                                      **s/ James M. Munley**
                                      **Judge James M. Munley**
                                      **United States District Court**